Campbell, Chief Justice,
delivered the opinion of the court:
The question for decision is whether the Chemists’ Club is a social club within the meaning of section 801 of the revenue acts of 1918, 40 Stat. 1057, 1121, and of 1921, 42 Stat. 227, 291. The applicable provision is section 801, imposing' a tax on the amount paid as dues or initiation fees to “ any social, athletic, or sporting club or organization.” There is a specific exemption of dues or fees paid to “ a fraternal society, order, or association, operating under the lodge system.” The regulations prescribed by the Treasury Department make it clear that it is not every club that comes within the terms of the taxing act, and it is accordingly declared that “the purposes and activities of a club and not its name determine its character for the purpose of the tax on dues.” Defining a social club, article 4 of the regulations provides that any organization which maintains quarters or arranges periodical dinners or meetings for the purpose of affording its members an opportunity of congregating for social intercourse is a “ social club,” but the regulation adds this important qualification, “unless its social features are not a material purpose of the organization but are subordinate and merely incidental to the active furtherance of a different and predominant purpose, such as, for example, religion, the arts, or business.” Treating these regulations as embodying the construction given the taxing act by the Treasury Department, it appears that where the “ predominant purpose ” of the organization is the accomplishment of something in religon, the arts, or business it is not a social club notwithstanding it provides incidentally means of social intercourse. And that some such distinction is to be observed seems plain, because practically all clubs may be said to have a feature of the social, using the term as having to do with human intercourse; but all clubs are not social or athletic or sporting clubs. If the criterion is the dominant purpose of the organization, it is not difficult to determine that the Chemists’ Club is not a social club, because its dominant purpose is that of a scientific or educational or *161 ganization. Article 4 of the regulations to which we have adverted declares that—
“An organization that has for its exclusive or predominant purpose religion or philanthropic social service (or the advancement of the business or commercial interest of a city or community) is so clearly not a social club or organization that its possession and use of a building furnished with social club facilities does not render taxable dues or fees paid to it.”
The certificate of incorporation of the plaintiff states that “ the particular objects for which the club is to be formed are to promote the interests of chemists and those interested in the science and application of chemistry,” and to the end that this dominant purpose may be accomplished it provides a place furnished more or less with social-club facilities. Its membership is composed of chemists or those connected with chemical pursuits. It provides a building and provides certain scientific equipment. It maintains a library and publications bearing on the science of chemistry. It affords facilities for discussions and for experiments in the field of chemistry. Somebody gave it billiard tables and it has a chess board, but the membership is too busy to make much use of them. The club has no ball room, card room, gymnasium, or swimming pool, and it does not give card parties, dances, or other purely social affairs. It does have a large dining room and service-pantry kitchen on the second floor of the building and a kitchen in the basement which have been operated at a loss, indicative of the fact that chemists must eat, and it has what is called a lounging room, but these things are not confined to clubs or social organizations. The social features of the Chemists’ Club are incidental, and remotely so, to its general or “ predominant purpose,” and in our opinion it is not a social club within the meaning of the taxing acts. Judgment will be rendered in favor of plaintiff for the amount of the taxes exacted, with interest as provided by law. And it is so ordered.
Moss, Judge; Hat, Judge; and Booth, Judge, concur.
Geaham, Judge, took no part in the decision of this case.