**LAWTONIAN CLUB, INCORPORATED,** an Oklahoma Corporation, Plaintiff,

v.

**UNITED STATES of America,** Defendant.

No. 67–81 Civ.

United States District Court W. D. Oklahoma.

Sept. 8, 1969.

---

7. Tehan v. United States ex rel. Shott, 382 U.S. 406, 415, 86 S.Ct. 459, 464, 15 L.Ed.2d 453 (1966).

T. D. Nicklas and W. F. Parrish, Jr., Lawton, Okl., for plaintiff.

Daniel L. Penner, Dept. of Justice, Washington, D. C., for defendant.

## MEMORANDUM OPINION

### DAUGHERTY, District Judge.

Plaintiff, with consent of its members, sues for refund of excise taxes paid the Defendant for the years 1961, 1962 and 1963 under 26 U.S.C. § 4241.[1]

The controversy essentially involves whether the Plaintiff is a business club as it claims or is a social club as Defendant claims.

From a Stipulation and evidence adduced at a non-jury trial, the Court finds that the permanent members of the Plaintiff Club for the most part are business men in Lawton, Oklahoma, representing a wide variety of businesses. Their wives and members of their families are entitled to and in some instances

---

1. This Statute (which has now been amended) and Regulations thereunder then provided:

Internal Revenue Code of 1954:

SEC. 4241. IMPOSITION OF TAX.

(a) *Rate.*—There is hereby imposed—

(1) *Dues or membership fees.*—A tax equivalent to 20 percent of any amount paid as dues or membership fees to any social, athletic, or sporting club or organization, if the dues or fees of an active resident annual member are in excess of $10 per year.

\* \* \* \* \*

(26 U.S.C. 1964 ed., Sec. 4241.)

Treasury Regulations on Facilities and Services Excise Tax (1954 Code)

Sec. 49.4241–1. *Tax on club dues, initiation fees, and Life memberships.*

\* \* \* \* \*

(e) *Social, athletic, or sporting club or organization*—(1) In general. The purposes and activities of a club or organization, and not the name, determine its character for purposes of the tax. Every club or organization which has a membership of individuals or family units and which has social, athletic, or sporting features is presumed to be a social, athletic, or sporting club or organization, until the club or organization has satisfied the district director that it is not in fact a social, athletic, or sporting club or organization within the meaning of the regulations in this part. (However, see §§ 49.4243–1 and 49.4243–3 for exemptions provided for fraternal organizations and certain swimming or skating clubs.) If any such club or organization claims that it is not in fact a social, athletic, or sporting club or organization, it may submit to the district director a request for a determination, together with a copy of its charter or constitution and bylaws, and a statement showing its actual purposes, activities, practices, facilities, and the character of its expenditures. Any additional evidence required shall be submitted upon the request of the district director. When a club or organization has been held not to be a social, athletic, or sporting club or organization, it need not make any further showing with respect to its status for purposes of the tax, unless it changes the character of its organization or operations or the purposes for which it was originally created. Each district director will keep a list of all clubs and organizations in his district held not to be social, athletic, or sporting clubs or organizations, and may from time to time reinvestigate the status of those clubs and organizations.

(2) *Social clubs or organizations.* Any club or organization which maintains quarters, or arranges periodic dinners or meetings, for the purpose of affording the members an opportunity of congregating for social intercourse is a social club or organization within the meaning of the regulations in this part, unless its social features are not a material purpose of the organization, but are subordinate and merely incidental to the active furtherance of a different and predominant purpose, such as religion, the arts, or business. An organization which has for its exclusive or predominant purpose religion, philanthropic social service, or the advancement of the business or commercial interests of a city or community is not a social club or organization. Thus, a religious organization, chamber of commerce, commercial club, trade organization, or the like, is not considered to be a social club or organization merely because it has incidental social features. However, if the social features are a material purpose of the club or organization, it is a social club or organization within the meaning of the regulations in this part. \* \* \*

\* \* \* \* \*

(26 C.F.R., Sec. 49.4241–1.)

do use the facilities of the Club. Approximately six permanent members are females. They appear to be widows of former permanent members. Some are active in business and some are not. An associate membership is provided for partners or firm members of permanent members. There is a membership fee and monthly dues. The Club membership is, therefore, not limited to any certain business nor to males. Guests of the Hotel would, upon request, be issued a temporary membership card if they presented a proper appearance to the Hotel managers or clerk. This privilege was advertised in the Hotel rooms.

The Club which is operated by the Hotel in which it is located was formed through the lead of the Hotel after liquor prohibition was repealed in Oklahoma. The Club serves lunch and dinner through the Hotel kitchen facilities. It regularly stays open til approximately 11:00 P.M., but on occasions has stayed open until Midnight or past. It is closed on Sundays. The Club has a bar in which alcoholic beverages are served at luncheon time and through the remainder of the day that the Club is open. Some permanent members use the Club for cocktails after work and before going home.

 The Plaintiff's Articles of Incorporation provide: [2]

The purposes for which the Corporation is formed are:

To foster and cultivate the social, educational and business relations of the members; to broaden their interests in the pursuit of their occupations and professions, and to encourage among the members closer personal acquaintance and friendly spirit of mutual co-operation * * * to erect, equip and maintain social rooms, club houses and other appropriate buildings for the use and enjoyment of all the members of the Club, * * *.

The testimony of certain of its members and those connected with the Hotel inform that the purpose of organization was to meet hotel competition with motels on the repeal of liquor prohibition and afford a quiet place for Club members to imbibe of alcoholic beverages and enjoy food from the Hotel kitchen. Those members testifying stated that they used the Club for business purposes, but some acknowledged that members of their families used the Club facilities and that they had dined there with their families but only on infrequent occasions. Permanent members of the Club and their families enjoy swimming pool privileges of the Hotel.

Plaintiff relies heavily on the case of Rockefeller Center Luncheon Club v. Johnson, 131 F.Supp. 703 (S.D.N.Y. 1955).[3] This case was not appealed to the Court of Appeals but in a later case, Down Town Ass'n of City of New York v. United States, 278 F.2d 313 (Second Cir. 1960), in an opinion written by Judge Lewis of our Circuit, a contrary view to Rockefeller was approved. This opinion states that the Rockefeller case has been rejected by the majority of recent cases. The Defendant relies upon a large number of cases including Down Town Ass'n of City of New York v. United States, supra, and the Tenth Circuit case of Lake of the Forest Club v. United States, 137 F.2d 843 (Tenth Cir. 1943). See 80 A.L.R. 1296 and Duquesne Club v. Bell, 3 Cir., 127 F.2d 363, 143 A.L.R. 1377.

The test is whether the Club in its operation has social features and, if so, whether they are subordinate and merely incidental to the active furtherance of a predominate business purpose or if the social features are a material purpose of the Club. Duquesne Club v. Bell, 3 Cir., 127 F.2d 363, 143 A.L.R. 1377 at p. 1382; Arkwright Club of City of New

2. It is recognized that the actual operation of the Club and not the recitals of its Articles of Incorporation is controlling and determinative. And that each case must be decided on its own facts.

3. Plaintiff also cites Century Club v. United States, 12 F.Supp. 617, 81 Ct.Cl. 878 (1935), and Vecellio v. United States, 196 F.Supp. 1 (D.W.Va.1961).

York v. United States, 117 F.Supp. 411, 127 Ct.Cl. 247 (1954).

The Court finds and concludes that social features were a purpose of the organization of the Club as far as the permanent members were concerned. This is not to exclude business and business contacts as also being a purpose of organization as to these members. The fact that the purpose of the Hotel in fostering the organization of the Club was to meet competition with motels after the repeal of liquor prohibition and make money for the Hotel is not controlling. It is the purpose of the members of the Club, as shown by their activities, that is important to the Court. Down Town Ass'n of City of New York v. United States, supra.

The manner of the operation of the Club is also important to the Court. This is of paramount importance. It appears that one of the moving forces behind the organization of the Club was created by the repeal of liquor prohibition in Oklahoma, that is, to afford a place in which to drink alcoholic beverages then made legal in Oklahoma. The act of assembling and drinking alcoholic beverages is highly social in nature. The case of Arkwright Club of City of New York v. United States, supra, holds, "The drinking of liquor is essentially a social function, ostensibly so, at any rate." In this connection, the evidence shows that liquor income from the Club averages about one-third of the total and sometimes approaches one-half thereof with the remaining income coming from the sale of food. Thus, the consumption of alcoholic beverages in the Club is a significant and material part of its operation. The use of the Club by wives and members of the families of permanent members is also social in character. Use of the Hotel's swimming pool by reason of Club membership by permanent members of the Club and their families is also social in character and perhaps could even be classified as athletic. The use of the Club including its liquid offerings by Hotel guests, both male and female, is deemed to be significantly so-

cial in character although, no doubt, it should be recognized that the need for food by travelers may be connected with their business activities if, in fact, their traveling is of a business nature. The Court, therefore, finds and concludes that social features are a material part of the Club in its operation and in the use of its facilities by its members, both permanent and temporary.

It is doubted that the *Rockefeller Center Luncheon Club* case is any longer a reliable authority. It seems to have become overwhelmed and rejected by the Down Town Ass'n of City of New York v. United States case from its own Circuit.

As the Court finds and concludes that social features of the Club are a material part of its operation and not merely incidental to the furtherance of a business activity afforded by the Club, the Plaintiff is not entitled to the refund sought and its Action should be dismissed.