John N. NEWLAND, James Tullis, A. A. Ashley and Butte Executives Club, an unincorporated association, Appellants,

v.

UNITED STATES of America, Appellee.

No. 13981.

United States Court of Appeals, Ninth Circuit.

March 28, 1955.

George P. Sarsfield, Butte, Mont., Ralph J. Anderson, Helena, Mont., for appellants.

H. Brian Holland, Asst. Atty. Gen., Ellis N. Slack, Lee A. Jackson, Karl Schmeidler, Sp. Assts. to Atty. Gen., Washington, D. C., Krest Cyr, U. S. Atty., Butte, Mont., for appellee.

Before MATHEWS, BONE and POPE, Circuit Judges.

MATHEWS, Circuit Judge.

In the year beginning on June 1, 1946, the Butte, Montana, Executives Club, an unincorporated association hereafter called the Butte club, had 238 members. In the year beginning on June 1, 1947, it had 246 members. In each of said years, each of the members paid $10 as annual dues. Thus the members paid, as annual dues, a total of $2,380 in the year beginning on June 1, 1946, and a total of $2,460 in the year beginning on June 1, 1947.

On May 1, 1947, $476 was collected from the Butte club as an admissions tax on the $2,380. On April 21, 1948, $492 was collected from the Butte club as an admissions tax on the $2,460. The $476 and the $492 were so collected on the theory that the $2,380 and the $2,460 were amounts paid for admission, within the meaning of §§ 1650 and 1700(a) (1) of the Internal Revenue Code of 1939, 26 U.S.C.A. §§ 1650, 1700(a) (1), hereafter called the Code.[1]

---

1. At all times pertinent here, §§ 1650 and 1700(a) (1) of the Code imposed a tax of 1 cent for each 5 cents or major fraction thereof "of the amount paid for admission to any place, including admission by season ticket or subscription", with specified exceptions; and § 1715 of the Code required every person receiving any payment for admission subject to such tax to collect such tax from the person making

On or about March 31, 1950, the Butte club filed claims for refund of the $476 and the $492 as having been illegally collected. The claims were disallowed by the Commissioner of Internal Revenue on June 9, 1950.

On August 4, 1950, the Butte club and three of its members, John N. Newland, James Tullis and A. A. Ashley, brought an action [2] against the United States under 28 U.S.C.A. § 1346(a) (1) [3] to recover the $476 and the $492 as having been illegally collected. An answer was filed, a trial was had, and on July 23, 1953, a judgment was entered ordering, adjudging and decreeing that plaintiffs (the Butte club and its three named members) take nothing by the action. This appeal is from that judgment.

The question presented is whether the $2,380 and the $2,460 were amounts paid for admission, within the meaning of §§ 1650 and 1700(a) (1) of the Code.

The term "amount paid for admission"[4] was not defined in § 1650 or § 1700 (a) (1) or elsewhere in the Code. However, at all times pertinent here, § 101.2 of Treasury Regulations 43, 6 F.R. 5367, 5583, 26 C.F.R., Cum.Supp., § 101.2,[5] provided:

" * * * An amount paid to become regularly entitled to the privileges of a club or other organization, as members or otherwise, is not an 'amount paid for admission' even though one of the privileges be the right to enter a clubhouse, club grounds, gymnasium, swimming pool, or the like. But where the chief or sole privilege of a so-called membership is a right of admission to certain particular performances or to some place on a definite number of occasions (as contrasted with a more or less unlimited right to enter a clubhouse or other place as many times as desired during a year or some other period), then the amount paid for such so-called membership is an 'amount paid for admission' within the meaning of the Code. * * * Where a person or organization acquires the sole right to use any place or the right to dispose of all the admissions to any place for one or more occasions, the amount paid for such right is not subject to the tax on admissions. Such a transaction constitutes a rental of the entire place and of the attraction, if any, whether or not it is so designated. However, if the person or organization in turn sells admissions to the place the tax will apply to amounts paid for such admissions. * * * "

This case was submitted to and decided by the District Court on a stipulation of facts. No other evidence was adduced. The pertinent facts were as follows:

The Butte club was organized in 1944 pursuant to an affiliation agreement between the Associated Executives Clubs, Incorporated, hereafter called the corporation, and the persons [6] organizing the Butte club. The corporation was a booking agency engaged in "the sale of education and entertainment talent" and in the promotion and organization of clubs in cities throughout the United States as an outlet for such "talent." The affiliation agreement provided:

" * * * An initiation fee of $10.00 shall be collected for each member admitted to [the Butte club] at any time. Annual dues shall be $10.00 per member payable in advance. (Dues shall be in addition to initiation fee for first year of each membership.) Each member shall

---

such payment for admission and to pay such tax to the collector of internal revenue of the district in which the principal office or place of business of the person receiving such payment for admission was located.

2. The complaint stated that the action was brought not only for the benefit of the Butte club and its three named members, but also for the benefit of all its other members.

3. Section 1346(a) (1) gives the United States district courts original jurisdiction of any civil action against the United States for the recovery of any internal-revenue tax alleged to have been erroneously or illegally collected, if the claim does not exceed $10,000.

4. See footnote 1.

5. Cf. 26 C.F.R., 1949 Edition, § 101.2, paragraphs (e) and (f).

6. James Tullis, Tom J. Davis and E. R. Blinn.

pay for meals in addition to initiation fee and dues. After first year,[7] all dues and initiation fees shall be used by [the Butte club] to pay speakers and for necessary local expense. Payment for each speaker shall be made on date of his appearance. It is agreed that, in contracting for speakers, [the corporation] acts as agent of [the Butte club], that such contracts are non-cancelable, and that [the corporation] assumes no obligation for any expense except speakers fees and local expense approved in writing by [the corporation] or its agents. All speakers shall be secured through [the corporation] during entire life of [the Butte club]. * * * For speakers appearing without charge or for expenses only, a service fee of $25.00 shall be paid by [the Butte club] to [the corporation] after first year. [The Butte club] agrees to grant reciprocity of membership to all men's dinner clubs associated with [the corporation]. * * *"

At all times pertinent here, the Butte club's by-laws provided:

" * * * The purpose and objects of [the Butte club] shall be, for education of its members through informational talks. It shall be a non-profit organization. * * * The business and affairs of [the Butte club] shall be managed by a board of 12 directors * * *. The board of directors shall arrange for the dinners and meetings of [the Butte club] each year, * * * providing such speaking [as] in their judgment shall best carry out the purpose of [the Butte club]. * * * Each membership shall include the wife or 'lady' friend, any children of high-school or college age, not gainfully employed, out-of-town house guest, out-of-town business guests. * * * As stated in the affiliation agree-

ment * * * [the Butte club] is a recognized affiliate of all other Executives and Knife and Fork clubs associated,[8] and provisions of visiting are reciprocal in all other clubs.[9] * * * "

At all times pertinent here, initiation fees and annual dues were paid by the Butte club's members, as provided in the affiliation agreement. All such fees and dues were used to pay the Butte club's necessary local expenses and to pay for speakers procured for the Butte club by the corporation, as provided in the affiliation agreement. In addition to their initiation fees and annual dues, the Butte club's members were required to pay for their meals at meetings of the Butte club, as provided in the affiliation agreement. Such meetings were held in a hotel, restaurant or hall in Butte, Montana.

■ The stipulation of facts stated, inter alia, that the only "benefit" derived by the members of the Butte club and the only "thing of value" received in return for the initiation fees and annual dues paid by them were the privilege of attending the "lectures" scheduled by the Butte club and the privilege of taking guests to such "lectures,"[10] as provided in the by-laws. Defendant (the United States) therefore contends that the $2,380 and the $2,460 were amounts paid for admission, within the meaning of §§ 1650 and 1700(a) (1) of the Code—a contention based on the provision of § 101.2 of Regulations 43 that, "where the chief or sole privilege[11] of a so-called membership is a right of admission to certain particular performances or to some place on a definite number of occasions (as contrasted with a more or less unlimited right to enter a clubhouse or other place as many times as desired during a year or some other period), then the amount

7. The Butte club's first year ended in 1945.

8. Meaning all Executives and Knife and Fork clubs associated with the corporation.

9. Meaning all other clubs associated with the corporation.

10. Meaning the privilege of attending meetings of the Butte club at which

speakers appeared and the privilege of taking guests to such meetings. The stipulation did not say that either of these privileges was "the chief or sole privilege" of membership in the Butte club.

11. This provision, it should be noted, said nothing about "benefits" or "things of value."

paid for such so-called membership is an 'amount paid for admission' within the meaning of the Code." This contention is rejected for the following reasons:

First. It appeared from the stipulation that the initiation fees and annual dues paid by the Butte club's members, including the $2,380 and the $2,460, were amounts paid to become regularly entitled to the privileges of the Butte club as members thereof. It did not appear from the stipulation that the chief or sole privilege of such membership was a right of admission to certain particular performances or to some place on a definite number of occasions.[12]

Second. It appeared from the stipulation that admission to the places where the Butte club's meetings were held was by membership card only, and that admission was restricted to members and their qualified guests,[13] as provided in the by-laws. It thus appeared from the stipulation that the Butte club, its members and their guests had the sole right to use such places on all occasions when such meetings were held; that the Butte club and its members had the right to dispose of all admissions to such places on such occasions; that these rights were acquired by the payment of initiation fees and annual dues, including the $2,380 and the $2,460; and that admissions to such places on such occasions were not sold.[14]

We therefore hold that the $2,380 and the $2,460 were not amounts paid for admission, within the meaning of §§ 1650 and 1700(a) (1) of the Code, and were not subject to the tax on admissions—a holding based on the following provisions of § 101.2 of Regulations 43: "An amount paid to become regularly entitled to the privileges of a club or other organization, as members or otherwise, is not an 'amount paid for admission' even though one of the privileges be to enter a clubhouse, club grounds, gymnasium, swimming pool, or the like. * * *

Where a person or organization acquires the sole right to use any place or the right to dispose of all the admissions to any place for one or more occasions, the amount paid for such right is not subject to the tax on admissions. Such a transaction constitutes a rental of the entire place and of the attraction, if any, whether or not it is so designated."

 We conclude that the $476 and the $492 were illegally collected from the Butte club, and that the Butte club is entitled to recover these amounts. Since these amounts were not collected from plaintiffs Newland, Tullis and Ashley, they are not entitled to recover them.

Accordingly, in so far as it orders, adjudges and decrees that plaintiffs Newland, Tullis and Ashley take nothing by this action, the judgment is affirmed. In so far as it orders, adjudges and decrees that the Butte club take nothing by this action, the judgment is reversed, and the case is remanded with directions to enter judgment for the Butte club.

---

12. Cf. Executives Club of Louisville v. Glenn, D.C.W.D.Ky., 107 F.Supp. 668.

13. Including members of other clubs associated with the corporation.

14. Cf. Newland v. Penwell, D.C.Mont., 85 F.Supp. 294.